IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT COURT OF CALIFORNIA

FRANK GREGORY FORD,

                  Plaintiff,                No. 2:12-CV-02370 KJM-AC

      vs.

VICTOR ARTIGA, et al.,

                  Defendants.          <u>ORDER</u>

_____/

        On February 11, 2013, defendants moved to dismiss plaintiff's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (ECF 29.)  Plaintiff submitted an opposition on March 13, and defendants filed a reply on March 21, 2013.  (ECF 35, 36.)  The court heard oral argument on March 29, 2013; James Goodwin appeared for plaintiff and Chi Soo Kim appeared for defendants.  For the following reasons, defendants' motion is GRANTED.

I.      <u>BACKGROUND</u>

        In 2003, plaintiff was stationed in Iraq as a non-commissioned counterintelligence officer of the California Army National Guard (CAANG), under the command of the 205th Military Intelligence Brigade.  (ECF 1 ¶ 6.)  He was also a U.S. Navy corpsman and U.S. Army medic.  (*Id.*)  Defendant Victor Artiga was a CAANG captain and plaintiff's company

commander.  (*Id.* ¶ 7.)  Defendant Merle Madera was also a CAANG captain and a doctor.
Defendant Timothy D. Ryan was a CAANG lieutenant colonel and defendant Thomas M. Pappas
was colonel of the 205th Military Intelligence Brigade.  (*Id.* ¶¶ 8-9.)

Plaintiff alleges that while in Iraq, he observed weapons of mass destruction, with
markings indicating they were manufactured in the United States, in an underground storage
bunker at Balad Air Force Base.  (*Id.* ¶ 19.)  Plaintiff told his superiors what he had seen.  (*Id.*)
Plaintiff also states that he recruited an Iraqi confidential informant who provided information
that led to the recovery of forty million dollars, which plaintiff turned over to his superiors.
Plaintiff later asked his commanding officers for money to pay the informants but was told he
should use his own money.  Based on this interaction, plaintiff believes that his commanding
officers embezzled the money plaintiff recovered through the informants.  (*Id.* ¶ 20.)  The
informant plaintiff worked with, believed to know the location of Saddam Hussein, was severely
beaten by U.S. personnel. The informant died from the beatings after plaintiff was unable to
revive him.  (*Id.* ¶ 21.)  In May 2003, plaintiff cared for abused and tortured prisoners at Abu
Ghraib prison and told Artiga and Ryan that torture was wrong, illegal and should end.  (*Id.* ¶ 22.)

On June 15, 2003, Artiga relieved plaintiff from duty, confiscated his M16 rifle
and referred plaintiff for psychiatric assessment.  (*Id.* ¶ 23.)  Plaintiff "filed formal charges for
illegal torture and abuse by and against his team and demanded 'Whistleblower' protection" on
June 17.  (*Id.* ¶ 24.)

Madera examined plaintiff on June 18, purportedly to determine whether he
suffered from psychosis.  (*Id.* ¶ 25.)  Plaintiff was kidnapped, drugged, bound to a stretcher and
medically evacuated to Germany without being listed on the aircraft manifest.  (*Id.* ¶ 27.)
Madera, who monitored plaintiff during the trip to Germany, told plaintiff that Artiga was trying
to silence him and had forced Madera to evacuate him.  (*Id.*)

In July 2003, "LTC Dana"[1] ordered plaintiff to "not institute civil legal action
against the California Army National Guard, or any of its officers regarding the state directed

---

[1] At hearing, Ford explained that Dana is a supervising lieutenant in Sacramento, California.

1    torture program [] under way at Abu Ghraib prison in Iraq." (*Id.* ¶ 15.)  Plaintiff remained a

2    member of the Individual Ready Reserve until June 28, 2011.  (*Id.*)

3                On September 14, 2012, plaintiff filed a complaint alleging the following causes of

4    action[2]: (1) a claim against all defendants for violation of his constitutional rights, made under 42

5    U.S.C. § 1983; (2) a claim for medical malpractice against Madera; (3) a claim for false

6    imprisonment under California Government Code § 820.4 against unspecified defendants; (4) a

7    claim for war crimes under 18 U.S.C. § 2441 against all defendants; (5) a claim for torture against

8    all defendants; and (6) a claim under the Whistleblower Protection Act (WPA), 5 U.S.C.

9    § 2302(b)(8), against all defendants.  (*Id.*)

10   II.    STANDARD

11          A.  Motion to Dismiss Under Rule 12(b)(1)

12                Federal courts are courts of limited jurisdiction and, until proven otherwise, cases

13   lie outside the jurisdiction of the court.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S.

14   375, 377–78 (1994).  Lack of subject matter jurisdiction may be challenged by either party or

15   raised *sua sponte* by the court.  FED. R. CIV. P. 12(b)(1); FED. R. CIV. P. 12(h)(3); *see also*

16   *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583–84 (1983). A Rule 12(b)(1) jurisdictional

17   attack may be either facial or factual.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  In a

18   facial attack, the complaint is challenged as failing to establish federal jurisdiction, even assuming

19   all the allegations are true and construing the complaint in the light most favorable to plaintiff.

20   *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

21                By contrast, in a factual attack, the challenger provides evidence that an alleged

22   fact is false resulting in a lack of subject matter jurisdiction.  *Id.*  In these circumstances, the

23   allegations are not presumed to be true and "the district court is not restricted to the face of the

24   pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual

25   disputes concerning the existence of jurisdiction."  *McCarthy v. United States*, 850 F.2d 558, 560

26   (9th Cir. 1988).  "Once the moving party has converted the motion to dismiss into a factual

27   ───────────────────

28   [2] The complaint also named CAANG as a defendant; the court dismissed all claims against this
     defendant on March 5, 2013.  (ECF 34.)

                                                       3

1   motion by presenting affidavits or other evidence properly brought before the court, the party

2   opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of

3   establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036,

4   1039 n.2 (9th Cir. 2003).

5                  Jurisdictional dismissal is "exceptional" and warranted only "'where the alleged

6   claim under the constitution or federal statutes clearly appears to be immaterial and made solely

7   for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and

8   frivolous.'"  *Safe Air for Everyone*, 373 F.3d at 1039 (quoting *Bell v. Hood*, 327 U.S. 678, 682–83

9   (1948)).  Accordingly, the Ninth Circuit has held that "[j]urisdictional finding of genuinely

10  disputed facts is inappropriate when 'the jurisdictional issue and substantive issues are so

11  intertwined that the question of jurisdiction is dependent on the resolution of factual issues going

12  to the merits of an action.'"  *Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*, 711 F.2d 138, 139

13  (9th Cir. 1983) (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)).

14  "Normally, the question of jurisdiction and the merits of an action will be considered intertwined

15  where . . . a statute provides the basis for both the subject matter jurisdiction of the federal court

16  and the plaintiff's substantive claim for relief." *Id*. (quotation omitted).

17          B.   Motion to Dismiss Under Rule 12(b)(6)

18                 Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

19  dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may

20  dismiss "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

21  under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

22  1990).

23                 Although a complaint need contain only "a short and plain statement of the claim

24  showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion

25  to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a

26  claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

27  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something

28  more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and

1   conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'" *Id.* (quoting

2   *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss

3   for failure to state a claim is a "context-specific task that requires the reviewing court to draw on

4   its judicial experience and common sense." *Id.* at 679.  Ultimately, the inquiry focuses on the

5   interplay between the factual allegations of the complaint and the dispositive issues of law in the

6   action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

7               In making this context-specific evaluation, this court "must presume all factual

8   allegations of the complaint to be true and draw all reasonable inferences in favor of the

9   nonmoving party." *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir. 1987).  This rule

10  does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478

11  U.S. 265, 286 (1986), *quoted in Twombly*, 550 U.S. at 555, nor to "allegations that contradict

12  matters properly subject to judicial notice," or to material attached to or incorporated by reference

13  into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A

14  court's consideration of documents attached to a complaint or incorporated by reference or matter

15  of judicial notice will not convert a motion to dismiss into a motion for summary judgment.

16  *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).

17      III.    <u>ANALYSIS</u>

18          A.  Tort Claims

19              Defendants assert that plaintiff's claims for malpractice and false imprisonment

20  must be converted to claims under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, *et seq.*

21  (ECF 29 at 5.)  The FTCA is the sole means of bringing tort claims arising from injuries inflicted

22  by federal employees acting within the scope of their employment.  28 U.S.C. § 2679(b)(1).

23  Under the Westfall Act, the Attorney General may certify that a named individual defendant was

24  acting in the scope of his or her employment with the federal government, in which case the

25  United States is substituted as the party defendant for the adjudication of plaintiff's tort claims.

26  28 U.S.C. § 2679(d)(1).  The Westfall Act defines a National Guard member as a federal

27  employee "while engaged in training or duty under section 115, 316, 502, 503, 504, or 505 of title

28  32." 28 U.S.C. § 2671.  The court has accepted the U.S. Attorney's office's certification that

1    Artiga, Madera, Ryan and Pappas were acting in the scope of their employment during the time

2    when plaintiff was serving in Iraq.  (ECF 28, 32.)  "Subsection 502(f)(1) of title 32 places a

3    broad swath of National Guard activity within the scope of federal employment for purposes of

4    the Westfall Act, because it covers 'training or other duty' that a guardsman may be ordered to

5    perform '[u]nder regulations to be prescribed by the Secretary of the Army or Secretary of the Air

6    Force. . . .'"  *Jackson v. Tate*, 648 F.3d 729, 736 (9th Cir. 2011) (hereinafter "*Tate*").

7            Plaintiff has challenged the U.S. Attorney's Office's certification, arguing that the

8    torture he alleges occurred cannot be within the scope of the individual defendants' employment.

9    (ECF 31.)  "When the plaintiff challenges the Attorney General's scope of employment

10   certification, '[t]he United States . . . must remain the federal defendant in the action unless and

11   until the District Court determines that the employee, *in fact,* and not simply as alleged by the

12   plaintiff, engaged in conduct beyond the scope of his employment.'"  *Tate*, 648 F.3d at 735 (citing

13   *Osborn v. Haley,* 549 U.S. 225, 231 (2007)) (emphasis in original).  Plaintiff has the burden of

14   providing evidence to prove by a preponderance of the evidence that the individual defendants

15   acted outside the scope of their employment.  *Id.*  To determine whether a defendant acted in the

16   scope of his employment, courts generally apply the law of the state in which the alleged tort

17   occurred, but "Congress expressed its intent that foreign law not apply."  *Kashin v. Kent*, 457 F.3d

18   1033, 1037 (9th Cir. 2006).

19           In *Rasul v. Myers*, former detainees at the U.S. Naval Base at Guantanamo Bay,

20   Cuba, sued military officials and Donald Rumsfeld, former Secretary of the U.S. Department of

21   Defense, alleging illegal detention and torture.  512 F.3d 644, 649 (D.C. Cir. 2008), *cert. granted,*

22   *judgment vacated*, 555 U.S. 1083 (2008), *relevant portion reinstated on remand*, 563 F.3d 527,

23   528-29 (D.C. Cir. 2009), *cert. denied*, 558 U.S. 1091 (2009).   The court applied the law of the

24   District of Columbia, "the place where the employment relationship exist[ed]," in concluding that

25   defendants had acted in the scope of their employment because the alleged torts were directly

26   related to defendants' duties to detain and interrogate the plaintiffs.  *Id.* at 655-58.  Because

27   District of Columbia courts have stated that criminal activity is within the scope of employment if

28   it derives from the employee's duties, the *Rasul* plaintiffs' "allegations of serious criminality [did]

6

not alter [the court's] conclusion that the defendants' conduct was incidental to authorized conduct." *Id.* at 660.  More recently, when Iraqi and Afghani citizens who had been held at Abu Ghraib and other detention facilities sued Army officials and Rumsfeld, alleging that they had been subjected to horrific abuse while detained, the court again concluded that defendants acted in the scope of their employment under *Rasul*.  *Ali v. Rumsfeld*, 649 F.3d 762, 764-66, 774-775 (D.C. Cir. 2011).

Plaintiff has submitted evidence with his opposition to the U.S. Attorney's certification, specifically, redacted documents that appear to reference the events described in the complaint.  (*See* Ex. A, ECF 31.)  However, plaintiff has not explained how defendants' actions are outside the scope of their employment as defined by District of Columbia law.  Rather, plaintiff argues that defendants' actions towards him were motivated by their desire to conceal torture of detainees in Iraq, actions that are within the scope of defendants' employment under *Ali* and *Rasul*.  (ECF 31 at 2.)  Because plaintiff has not alleged facts showing that the individual defendants were not acting in the scope of their employment, the court accepts the government's certification and considers plaintiff's tort claims for false imprisonment and medical malpractice under the terms of the FTCA.

Defendants argue correctly that plaintiff cannot bring his claims under the FTCA because they are based on conduct that occurred in a foreign country.  (ECF 29 at 7, citing 28 U.S.C. § 2680(k).)[3]  In *Sosa v. Alvarez-Machain*, the Supreme Court ruled that Section 2680(k) strictly bars suits based on any wrongful acts in a foreign country, even when the actions are a result of decisions made within the United States.  542 U.S. 692, 702 (2004).  Plaintiff does not dispute that this provision of the FTCA bars his claims for Malpractice and False Imprisonment.[4]

---

[3] Defendants also argue that the FTCA claims are barred because an administrative claim was never presented to the U.S. Army and because the underlying actions occurred during a time of war.  (ECF 29 at 6-8.)  The court does not reach these arguments.

[4] Although the FTCA's bar on actions arising from conduct in a foreign country is a sufficient reason for the court to grant defendants' motion to dismiss plaintiff's tort claims, defendants argue correctly that plaintiff's claims are jurisdictionally barred by *Feres v. United States*, 340 U.S. 135, 146 (1950), discussed below.

1    The court grants defendants' motion to dismiss plaintiff's second and third causes of action under

2    Rule 12(b)(1) for lack of subject-matter jurisdiction.  *See Harbury v. Hayden*, 522 F.3d 413, 423

3    (D.C. Cir. 2008) (affirming dismissal under *Sosa* for lack of subject-matter jurisdiction).

4         B.   Constitutional Claims

5              Plaintiff's complaint seeks monetary damages under 42 U.S.C. § 1983 for

6    violations of the First and Fourth Amendments of the Constitution.  (ECF 1 ¶ 28.)  Section 1983

7    allows for private rights of action for constitutional violations against defendants acting under

8    color of state law.  42 U.S.C. § 1983.  Defendants argue that plaintiff should have alleged his

9    constitutional claims under *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*,

10   403 U.S. 388 (1971), which allows claims for damages against federal employees for violations of

11   constitutional rights, but that even had these claims been pled correctly, they would be barred by

12   *Feres v. United States*, 340 U.S. 135 (1950).  (ECF 29 at 5, 8.)  Defendants argue in the

13   alternative that plaintiff's constitutional claims are time-barred.  (*Id*. at 5.)

14         1.   *Feres* Doctrine

15              In *Feres*, the Supreme Court held that servicemen could not bring claims to

16   recover damages under the FTCA against the federal government or its employees for injuries

17   incurred "incident to service."  340 U.S. at 146.  Courts have since expanded the scope of the

18   doctrine to prevent military personnel from bringing suits to recover damages for constitutional

19   violations suffered during service.  *Chappell v. Wallace*, 462 U.S. 296, 305 (1983).  *See also*

20   *Zaputil v. Cowgill*, 335 F.3d 885, 886-887 (9th Cir. 2003) (*Feres* barred suit alleging violations of

21   Thirteenth and Fourteenth Amendments against CAANG officers); *Jackson v. Brigle*, 17 F.3d

22   280, 284 (9th Cir. 1994) (*Feres* precluded serviceman from bringing *Bivens* claim based on

23   investigation and discharge due to his homosexual lifestyle).  "The *Feres* doctrine is applicable

24   whenever a legal action would require a civilian court to examine decisions regarding

25   management, discipline, supervision, and control of members of the armed forces of the United

26   States."  *Zaputil*, 335 F.3d at 887 (citations and quotations omitted).  Although it is not clear from

27   plaintiff's complaint whether all defendants are federal employees for the purposes of *Bivens*, as

28

8

1   defendants argue, *Feres* also applies to Section 1983 suits against state National Guard officials.

2   *Bowen v. Oistead*, 125 F.3d 800, 803 n.2 (9th Cir. 1997).

3               For the *Feres* doctrine to apply, "[t]he injured person [must have been] a member

4   of the armed forces of the United States at the time the injury was sustained [and] the injury must

5   arise out of or occur in the course of activity incident to military service." *Tate*, 648 F.3d at 733.

6   Plaintiff alleges in his complaint that he was a member of the armed forces at the time he was

7   injured.  Courts consider the following factors to determine whether the injuries occurred incident

8   to military service:

9
10               (1) the location where the activity giving rise to the injury occurred;
               (2) the duty status of the plaintiff at the time of activity giving rise
11               to the injury; (3) the benefits accruing to the plaintiff because of his
               status as a service member; and (4) the nature of the plaintiff's
12               activities at the time of the activity giving rise to the injury.

13   *Id.* (citing *Johnson v. United States*, 704 F.2d 1431, 1436 (9th Cir. 1983)).  In terms of the first

14   and second factors, plaintiff's injuries occurred while he was on active duty in Iraq.  The third

15   factor generally applies to cases in which the plaintiffs were injured during recreational activities,

16   *see Johnson*, 704 F.2d at 1438, and is not relevant here.  The last factor concerns whether hearing

17   plaintiff's claims could harm the military discipline system and examines if the plaintiff was

18   under military control when the injuries occurred.  *Id.* at 1439.  Here, plaintiff was performing his

19   duties of working with confidential informants and treating Iraqi prisoners when he received his

20   injuries.

21               Plaintiff asks the court to create an exception to *Feres* due to the particularly

22   egregious nature of defendants' conduct in this case, arguing that this is a matter of first

23   impression.  (ECF 35 at 6.)  The court declines to recognize such an exception.  In

24   *United States v. Stanley*, a former U.S. Army sergeant brought constitutional claims after learning

25   he had secretly been administered lysergic acid diethylamide (LSD) as part of the Army's

26   experimental drug study, causing him to suffer hallucinations and other psychological harm.

27   483 U.S. 669, 671, 682-84 (1987).  Without addressing the shocking nature of the *Stanley*

28   plaintiff's claims, the Supreme Court held that *Feres* and *Chappell* barred his claims under

9

1    *Bivens*.  Likewise, plaintiff's specific allegations here do not allow him to escape the prohibition

2    on awarding damages to military members for constitutional violations incident to service.  The

3    court dismisses plaintiff's request for damages based on constitutional violations under Rule

4    12(b)(1) for lack of subject matter jurisdiction.  *See Jackson*, 110 F.3d at 1486 (*Feres* issue is

5    jurisdictional).

6            2.    Statute of Limitations

7            Because the *Feres* doctrine does not bar suits for non-monetary relief, *Wilkins v.*

8    *United States*, 279 F.3d 782, 787 (9th Cir. 2002), and defendants have not specifically argued that

9    other forms of relief are unavailable to plaintiff, the court would normally allow plaintiff to

10   amend his complaint to seek an alternate form of relief.  However, defendants argue that even if

11   *Feres* did not prevent Ford from bringing his *Bivens* claims, they would be time-barred.  (ECF 13

12   at 5.)

13          "[A] cause of action accrues when the plaintiff knows or has reason to know of the

14   injury."  *Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 581 (9th Cir. 2012) (citations

15   and quotations omitted).  Statutes of limitations in *Bivens* and Section 1983 actions are defined

16   by the law of the forum state.  *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); *Papa v.*

17   *United States*, 281 F.3d 1004, 1009 (9th Cir. 2002).  In California, the relevant statute of

18   limitations is that for personal injury actions.  *W. Ctr. For Journalism v. Cederquist*, 235 F.3d

19   1153, 1156 (9th Cir. 2000).  As of 2003, when the events forming the basis for Ford's claims

20   occurred, a two-year statute of limitations was in effect.  *See Maldonado*, 370 F.3d at 954-55.

21   Defendants assert that plaintiff's claims accrued in 2003, when the incidents occurred, or in 2004

22   at the latest, when plaintiff publicly accused military personnel of misconduct.[5]  (ECF 29 at 7.)

23          Plaintiff does not dispute that over two years passed before he filed this claim in

24   2012, but argues that the statute of limitations was tolled.  (ECF 35 at 4.)  California law provides

25

26   _____

27   [5] Defendants request that the court take judicial notice of newspaper and internet articles
     published in 2004 that discuss plaintiff's accusations.  (ECF 29-4.)  The court takes judicial notice
28   of the publication of these articles, but not of the truth of their content.  *Von Saher v. Norton*
     *Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2009).

that "[t]he petitioner bears the burden of proving the applicability of equitable tolling." *In re Marriage of Zimmerman*, 183 Cal. App. 4th 900, 912 (Ct. App. 2010) (citing *Judelson v. Amer. Metal Bearing Co.*, 89 Cal. App. 2d 256, 266 (Cal. 1948); *V.C. v. Los Angeles Unified Sch. Dist.*, 139 Cal. App. 4th 499, 516 (Ct. App. 2006)).  However, "the question [of whether equitable tolling applies] ordinarily requires reference to matters outside the pleadings, and is not generally amenable to resolution on a Rule 12(b)(6) motion, where review is limited to the complaint alone." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993).  "California's fact-intensive test for equitable tolling is more appropriately applied at the summary judgment or trial stage of litigation." *Id.*

Plaintiff asserts that the doctrine of unclean hands applies because he filed a complaint with the Inspector General of the Department of the Army, filed for Whistleblower protection and his allegations were "cover[ed] up." (ECF 35 at 4.)  Under the doctrine of unclean hands, "a plaintiff [must] act fairly in the matter for which he seeks a remedy.  He must come into court with clean hands, and keep them clean, or he will be denied relief, regardless of the merits of his claim." *Kendall-Jackson Winery, Ltd. v. Superior Ct.*, 76 Cal. App. 4th 970, 978 (Ct. App. 1999).  However, the doctrine is an affirmative defense, not a doctrine used for equitable tolling. *See id.*  The doctrine of unclean hands is not applicable to whether the statute of limitations was tolled for plaintiff's action.

Plaintiff also argues that his claims were tolled because in July 2003, his superior officer ordered him not to file a complaint until all U.S. troops left Iraq, which did not happen until 2012, and because the Department of the Army has ignored plaintiff's Freedom of Information Act (FOIA) requests.  (ECF 35 at 5.)  California courts have recognized that equitable tolling is appropriate "where delay in commencing an action is induced by the conduct of the defendant." *Ateeq v. Najor*, 15 Cal. App. 4th 1351, 1357 (Ct. App. 1993) (quoting *Gaglione v. Coolidge*, 134 Cal. App. 2d 518, 527 (Ct. App. 1955)).  In *Ateeq*, the court recognized duress as grounds for equitable tolling, where the defendant had threatened to have the plaintiff, an immigrant, deported if he filed suit regarding defendant's fraudulent business conduct.  *Id.* at 1355-37*; see also Tompkins v. Union Pac. R. Co.*, No. 2:12-CV-01481 JAM-

GGH, 2013 WL 904897, at *1, 3-5 (E.D. Cal. Mar. 8, 2013) (tolling statute of limitations in case arising out of plaintiff's workplace injuries where defendant threatened to fire plaintiff if he reported injuries).  Defendants respond that even assuming that plaintiff was instructed not to file suit, this does not provide a basis for equitable tolling because plaintiff reported his accusations to the media.  (ECF 36 at 3-4.)  This shows, defendants argue, that plaintiff was not deterred by the superior officer's warning not to file suit.  (*Id.* at 4.)

Additionally, plaintiff alleges that he filed "formal charges" with the Department of the Army on July 15, 2003.  (ECF 1 ¶ 24.)  "Equitable tolling . . . may suspend or extend the statute of limitations when a plaintiff has reasonably and in good faith chosen to pursue one among several remedies and the statute of limitations' notice function has been served." *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1192 (Cal. 2013).  A statute of limitations is tolled while plaintiff pursues an administrative remedy because the administrative proceeding "affords a defendant notice of the claims against it so that it may gather and preserve evidence, and thereby satisfies the principal policy behind the statute of limitations." *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 102 (Cal. 2008).  "A plaintiff's pursuit of a remedy in another forum equitably tolls the limitations period if the plaintiff's actions satisfy these factors: 1) timely notice to the defendants in filing the first claim; 2) lack of prejudice to the defendants in gathering evidence for the second claim; and 3) good faith and reasonable conduct in filing the second claim." *Cervantes*, 5 F.3d at 1275.  Here, the facts in plaintiff's complaint are insufficient to determine whether he meets the factors for equitable tolling based on his filing of a complaint with the Army.

Nonetheless, because "the allegations of the complaint alone will *not* properly yield a conclusion that equitable tolling does not apply," *Id.* at 1277 (emphasis in original); *see also Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010), it is too early to conclude that equitable tolling is unavailable to plaintiff, whether based on earlier administrative remedies or the order from his superior officer.  Accordingly, plaintiff will be given leave to amend his complaint to seek non-monetary relief for alleged constitutional violations, if he is able to consonant with Federal Rule of Civil Procedure 11.

12

1   C.  War Crimes

2       The War Crimes Act provides:

3           Whoever, whether inside or outside the United States, commits a
            war crime, in any of the circumstances described in subsection (b),
4           shall be fined under this title or imprisoned for life or any term of
            years, or both, and if death results to the victim, shall also be
5           subject to the penalty of death.

6

7   18 U.S.C.A. § 2441.  The crime must be by or against nationals of the United States and members

8   of the Armed Forces of the United States.  *Id.*  A "war crime" is defined as a breach of relevant

9   sections of certain relevant treaties, such as the Geneva Convention.  *Id.*  As defendants argue,

10  this criminal statute does not allow a private right of action that allows plaintiff to state a claim

11  against defendants.  (ECF 29 at 11.)

12      To determine whether a private right of action exists under a particular statute, the

13  court must discern Congress's intent by looking at the language of the statute or the circumstances

14  of its enactment.  *California v. Sierra Club*, 451 U.S. 287, 293-94 (1981).  The Supreme Court

15  has explained that criminal statutes, which are created for the benefit of the general public, are

16  unlikely to give rise to a private right of action, though a criminal statute might allow for a private

17  remedy if it was also meant to benefit a particular group.  *Cannon v. Univ. of Chicago*, 441 U.S.

18  677, 690 (1979); *see Cort v. Ash*, 422 U.S. 66, 79-80 (1975).  Here, there is no indication that the

19  War Crimes statute was intended to benefit any group outside the general public.  The statute

20  provides that those who engage in war crimes may be subject to criminal penalties, the type of

21  language meant to protect the public as a whole.  *Cf. Cannon*, 441 U.S. at 690 n.13 (statutes

22  merely banning "unlawful" activity do not create private rights of action).  Other district courts

23  have found that 18 U.S.C. § 2441 does not create a private right of action.  *Hopson v. Secret*

24  *Serv.*, No. 3:12CV-770-H, 2013 WL 504921, at *2 (W.D. Ky. Feb. 8, 2013); *Swift v. Bush*,

25  No. CIV.A. 10-7388, 2011 WL 2517143, at *2 (E.D. Pa. Jun. 23, 2011).  In sum, plaintiff cannot

26  state a claim under this statute.  Defendants' motion to dismiss this claim under Rule 12(b)(6) for

27  failure to state a claim is granted, without leave to amend.

28  /////

13

1    D.  Whistleblower Protection Act

2          The Whistleblower Protection Act (WPA), 5 U.S.C. § 2302, prohibits adverse

3    employment actions against a federal employee as a result of the employee's disclosure of what

4    the employee reasonably believes to be illegal actions or mismanagement.  5 U.S.C. § 2302(b)(8).

5    However, the WPA does not apply to members of the military.  *Verbeck v. United States*, 89 Fed.

6    Cl. 47, 61 (Fed. Cl. 2009).  Moreover, as defendants argue (ECF 29 at 8), the *Feres* doctrine

7    would bar claims brought under the WPA.  *Wright v. Park*, 5 F.3d 586, 591 (1st Cir. 1993).  The

8    court grants defendants' motion to dismiss under Rule 12(b)(1) for lack of jurisdiction.

9    E.  Claims for Unlawful Use of Drugs and Torture

10          Finally, plaintiff does not explain the basis of his claims for unlawful use of drugs

11   or torture.  To the extent that plaintiff is making common law tort claims, they would be

12   precluded by the FTCA and the *Feres* doctrine, as explained above.  The court concludes that

13   plaintiff has not successfully stated either claim and grants defendants' motion to dismiss under

14   Rule 12(b)(6).

15   IV.   <u>CONCLUSION</u>

16          1.  Defendants' motion to dismiss is GRANTED.

17          2.  Plaintiff is given leave to amend his complaint as to his constitutional claims only,

18              if he is able.  Any amended complaint must be filed within twenty-one days of this

19              order.

20   DATED:  July 30, 2013.

21

22

23                                        UNITED STATES DISTRICT JUDGE

24

25

26

27

28

14