UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRANK GREGORY FORD,                          Civ. No.  S-12-2370 KJM GGH

   Plaintiff,

  v.                                          ORDER

VICTOR ARTIGA, et al.,

   Defendants.

This case was on calendar on November 15, 2013, for a hearing on a motion to dismiss filed by defendant California Military Department ("CMD")[1] and a separate motion to dismiss filed by Victor Artiga, Merle Madera, Timothy Ryan, Thomas Pappas and the United States ("the federal defendants").  James Goodwin appeared for plaintiff; Chi Soo Kim appeared for the federal defendants; James Phillips appeared for CMD.  After considering the parties' arguments, good cause appearing, the court GRANTS both motions to dismiss.

/////

/////

/////

---

[1] Plaintiff has opposed the motion filed by the United States, but has not responded to CMD's motion, and thus has not complied with Local Rule 230(c).

1

1    I.  BACKGROUND

2          A. Procedural Background

3                On September 14, 2012, plaintiff filed a complaint alleging generally that in 2003,

4    while he was on active duty in Iraq as a member of a Military Intelligence Brigade of the

5    California Army National Guard, he became aware of numerous improprieties on the part of

6    military personnel and filed a complaint, seeking protection as a whistleblower.  ECF No. 1 ¶¶ 6,

7    19-24.  Thereafter he was kidnapped, drugged and flown to Germany.  *Id*. ¶ 27.  He also alleged

8    that defendant Madera, a medical doctor, improperly diagnosed plaintiff as suffering from a

9    mental disorder.  *Id*. ¶ 32.  The complaint comprises five causes of action:  (1) a violation of

10   42 U.S.C. § 1983; (2) medical malpractice; (3) false imprisonment; (4) war crimes, 18 U.S.C.

11   § 2441; (5) torture through unlawful use of drugs; and (6) violation of the Whistleblowers'

12   Protection Act, 5 U.S.C. § 2302 (b)(8).  *Id*. ¶¶ 18-49.

13               On December 5, 2012, the clerk entered default against defendant Madera.  ECF

14   No. 8.  On December 11, 2012, Madera filed a motion to set aside the default.  On December 14,

15   2012, CMD filed a motion to dismiss.

16               On February 11, 2013, the federal defendants filed a motion to dismiss.  ECF

17   No. 29.  On February 13, 2013, the court substituted the United States as defendant with respect

18   to the tort claims only.  ECF No. 32.

19               On March 5, 2013, the court granted Madera's motion to set aside the default, and

20   granted CMD's motion to dismiss with prejudice.  ECF No. 34.

21               On July 30, 2013, the court granted the federal defendants' motion to dismiss, but

22   granted plaintiff leave to file an amended complaint as to the constitutional claims only.  ECF

23   No. 40 (First Am. Compl. or "FAC").

24               Plaintiff filed his First Amended Complaint on August 15, 2013.  ECF No. 42.

25   This complaint is the subject of the pending motions to dismiss.

26          B.  Allegations of the First Amended Complaint

27               In 2003, plaintiff was a counter-intelligence officer with the California Army

28   National Guard in active duty in Iraq.  FAC, ECF No. 42 ¶¶ 6, 19.  In April of that year, he

2

1   observed weapons of mass destruction in an underground bunker, with markings indicating they

2   were manufactured in the United States.  *Id*. ¶ 19.  He notified the defendants, who were members

3   of his higher command.  *Id*.

4          In May 2003, plaintiff recruited a confidential informant ("CI"), who provided

5   plaintiff with information leading to the capture of $40,000,000 in currency, which he turned over

6   to his higher command.  *Id*. ¶ 20.  When he asked for money to pay the CI, he was told he would

7   have to use his own money.  *Id*.  Personnel of the United States believed the CI knew Saddam

8   Hussein's whereabouts and severely beat the CI, ultimately killing him.  *Id*. ¶ 20.

9          Also in May 2003, plaintiff, who is a trained Navy corpsman and Army medic,

10  was asked to care for prisoners who had been tortured at Abu-Ghraib prison.  *Id*. ¶ 22.  He told

11  defendants Artiga and Ryan that torture was wrong and illegal.  *Id*.

12         On June 15, 2003, Artiga relieved plaintiff of his position, took away his rifle, and

13  referred him for a psychiatric assessment.  *Id*. ¶ 23.  On June 17, plaintiff filed formal charges of

14  torture and sought whistleblower protection.  *Id*. ¶ 14.  On June 18, defendant Madera, a doctor,

15  evaluated plaintiff for psychosis and was coerced by Artiga to arrange medical evacuation for

16  plaintiff.  *Id*.  On June 21, plaintiff was kidnapped, drugged, strapped to a stretcher and flown out

17  of Iraq to Germany.  *Id*.

18         In July 2003, an officer of the California Army National Guard ordered plaintiff

19  not to institute legal action against the National Guard or any of its officers until military

20  personnel were out of Iraq because his suit would damage the war effort and jeopardize military

21  personnel.  *Id*. ¶ 15.

22         As the federal defendants observe, the factual allegations of the First Amended

23  Complaint are largely unchanged from the original complaint.  Federal Defs.' Mot. to Dismiss,

24  ECF No. 46 at 8.  In addition, plaintiff has realleged the tort causes of action despite the court's

25  clear order giving plaintiff leave to amend only the constitutional claims.  Moreover, plaintiff has

26  again named the CMD as a defendant despite this court's earlier order dismissing all claims

27  against it with prejudice.  ECF No. 34.

28  /////

1    The First Amended Complaint is comprised of the following causes of action:

2    (1) violation of 42 U.S.C. § 1983, alleging violations of plaintiff's First and Fourth Amendment

3    rights; (2) medical malpractice; (3) false imprisonment; (4) war crimes, 18 U.S.C. § 2441;

4    (5) unlawful use of drugs constituting torture; (6) violation of the Whistleblower Protection Act,

5    5 U.S.C. § 2302(b)(8); (7) violation of 42 U.S.C. §§ 1982-1988, stemming from a violation of the

6    Torture Victims Protection Act; (8) a violation of the Geneva Convention; and (9) declaratory

7    relief.  ECF No. 42 ¶¶ 18-60.

8    Plaintiff seeks general, special and punitive damages, as well as an admission from

9    the United States that he was mistreated when he was falsely diagnosed as psychotic, and a

10   promotion to the rank of Warrant Officer.  *Id.* ¶¶ 59-60 & Prayer for Relief.

11   II.  MOTIONS TO DISMISS UNDER RULE 12(b)(1)

12   The CMD and the federal defendants argue the case must be dismissed because the

13   court lacks subject matter jurisdiction over the claims.

14   A.  Standard for a Motion to Dismiss under Rule 12(b)(1)

15   Federal courts are courts of limited jurisdiction and, until proven otherwise, cases

16   lie outside the jurisdiction of the court.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S.

17   375, 377–78 (1994).  Lack of subject matter jurisdiction may be challenged by either party or

18   raised *sua sponte* by the court.  FED. R. CIV. P. 12(b)(1); FED. R. CIV. P. 12(h)(3); *see also*

19   *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583–84 (1983).  A Rule 12(b)(1) jurisdictional

20   attack may be either facial or factual.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  In a

21   facial attack, the complaint is challenged as failing to establish federal jurisdiction, even assuming

22   all the allegations are true and construing the complaint in the light most favorable to plaintiff.

23   *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

24   By contrast, in a factual attack, the challenger provides evidence that an alleged

25   fact is false resulting in a lack of subject matter jurisdiction.  *Id.*  In these circumstances, the

26   allegations are not presumed to be true and "the district court is not restricted to the face of the

27   pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual

28   disputes concerning the existence of jurisdiction."  *McCarthy v. United States*, 850 F.2d 558, 560

4

1  (9th Cir. 1988).  "Once the moving party has converted the motion to dismiss into a factual

2  motion by presenting affidavits or other evidence properly brought before the court, the party

3  opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of

4  establishing subject matter jurisdiction."  *Savage v. Glendale Union High Sch.*, 343 F.3d 1036,

5  1039 n.2 (9th Cir. 2003).

6         Jurisdictional dismissal is "exceptional" and warranted only "'where the alleged

7  claim under the constitution or federal statutes clearly appears to be immaterial and made solely

8  for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and

9  frivolous.'"  *Safe Air for Everyone*, 373 F.3d at 1039 (quoting *Bell v. Hood*, 327 U.S. 678, 682–

10  83 (1948)).  Accordingly, the Ninth Circuit has held that "[j]urisdictional finding of genuinely

11  disputed facts is inappropriate when 'the jurisdictional issue and substantive issues are so

12  intertwined that the question of jurisdiction is dependent on the resolution of factual issues going

13  to the merits of an action.'"  *Sun Valley Gasoline, Inc. v. Ernst Enters., Inc*., 711 F.2d 138, 139

14  (9th Cir. 1983) (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)).

15  "Normally, the question of jurisdiction and the merits of an action will be considered intertwined

16  where . . . a statute provides the basis for both the subject matter jurisdiction of the federal court

17  and the plaintiff's substantive claim for relief."  *Id*. (quotation omitted).

18      B.  CMD's Motion to Dismiss

19         In the order filed March 5, 2013, the court granted CMD's motion to dismiss,

20  finding it had no power to hear suits infringing on a state's sovereign immunity, absent a waiver

21  of immunity.  ECF No. 34 at 3-5; *Virginia Office for Prot. & Advocacy v. Stewart*, ___ U.S. ___,

22  131 S. Ct. 1632, 1638 (2011) ("[A]bsent a waiver or valid abrogation, federal courts may not

23  entertain a private person's suit against a State."); *see also Savage*, 343 F.3d at 1039-40

24  (considering a motion to dismiss based on the Eleventh Amendment under Rule 12(b)(1)).

25  Despite this, plaintiff has included his claims against CMD in the First Amended Complaint.

26         Although California has waived its immunity from tort actions brought in state

27  court, it has not consented to suit in federal court.  *BV Eng'g v. Univ. of Cal.*, 858 F.2d 1394,

28  1396 (9th Cir. 1988); *Riggle v. State of Cal.*, 577 F.2d 579, 585 (9th Cir. 1978).  Moreover,

1    Congress did not abrogate states' immunity by enacting 42 U.S.C. § 1983.  *Will v. Mich. Dep't of*

2    *State Police*, 491 U.S. 58, 66 (1989).  It is true that the Eleventh Amendment does not preclude

3    actions for prospective injunctive and declaratory relief against state officials sued in their official

4    capacities, but this exemption does not apply to suits for injunctive relief against state agencies.

5    *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) ("[A] suit in which the State or

6    one of its agencies or departments is named as the defendant is proscribed by the Eleventh

7    Amendment.  This jurisdictional bar applies regardless of the nature of the relief sought")

8    (citations omitted)); *Ex Parte Young*, 209 U.S. 123, 159-60 (1908).

9            All claims against CMD, whether for damages or for injunctive or declaratory

10    relief, are dismissed, again without leave to amend.

11            C.  The Federal Defendants' Motion To Dismiss

12            The federal defendants argue this court lacks subject matter jurisdiction for several

13    reasons:  (1) the tort and constitutional claims are barred by the statute of limitations; (2) the tort

14    claims are barred under the Federal Tort Claims Act (FTCA) because they arose in a foreign

15    country and are based on combatant activities during war; (3) the *Feres* doctrine bars all but the

16    declaratory relief claim; (4) judicial review of tactical military decisions made during an active

17    military mission is not appropriate; (5) plaintiff failed to exhaust administrative remedies for his

18    claim under the Whistleblower Act; (6) the United States has not waived its sovereign immunity

19    for any claims under the Civil Rights Act; and (7) the United States has not waived sovereign

20    immunity for claims based on the Torture Victims Protection Act of 1991 ("TVPA").  Ultimately,

21    the court need not reach many of the federal defendants' jurisdictional claims.[2]

22            1. Tort Claims

23            In its prior order, the court converted plaintiff's claims for false imprisonment and

24    medical malpractice into claims under the FTCA, 28 U.S.C. § 2671, *et seq.*, which is the sole

25    means of pursuing tort claims against federal employees who inflict injury while acting in the

26    _____
27    [2] The court ultimately does not reach the federal defendants' statute of limitations
     argument, for example, and so denies their request to submit supplemental briefing on the impact
     of *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1033 (9th Cir. 2013) (en banc), which holds that the
28    statute of limitations for claims under the FTCA may be equitably tolled.

6

1  scope of their employment. ECF No. 40 at 5. The court then dismissed the claims under the

2  authority of *Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 (2004) ("We … hold that the FTCA's

3  foreign country exception bars all claims based on any injury suffered in a foreign country,

4  regardless of where the tortious act or omission occurred."). Plaintiff has not addressed the

5  court's prior order or even the foreign country exception in his opposition papers. At argument,

6  he merely submitted all matters on his briefing. These claims are dismissed without leave to

7  amend.

8                       2.  The *Feres* Doctrine[3]

9                          a.  Monetary Claims

10          As noted in its prior order, in *Feres v. United States*, the Supreme Court has held

11  the United States is not liable for a service member's injuries that "arise out of or are in the course

12  of activity incident to service," 340 U.S. 135, 142 (1950), and has extended this holding to a

13  service member's claims of constitutional injuries brought against superior officers. *Chappell v.*

14  *Wallace*, 462 U.S. 296, 305 (1983); *see also United States v. Stanley*, 489 U.S. 669, 684 (1987)

15  ("We hold that no *Bivens* remedy is available for injuries that 'arise out of or in the course of

16  activity incident to service.'"). A court determines whether an injury was incurred incident to

17  service by considering (1) the location of the injury-producing activity; (2) the duty status of the

18  plaintiff at the time of the activity; (3) the benefits flowing to plaintiff from his status as a service

19

20         [3] Although the court noted the difference between § 1983 actions and actions against
federal employees under *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*,
21  340 U.S. 135 (1971), plaintiff has again pleaded his civil rights action against the individual
defendants. While on active duty, the federal defendants are deemed to be federal employees.
22  *See, e.g., Perpich v. Dep't of Defense*, 496 U.S. 334, 346 (1990) (resolving question whether the
President may order members of the National Guard to active duty for training during peacetime
23  without the state's consent or declaration of an emergency and noting  "a member of the Guard
who is ordered to active duty in the federal service is thereby relieved of his or her status in the
24  State Guard for the entire period of federal service"); *Jackson v. Tate*, 648 F.3d 729, 736 (9th Cir.
25  2011). But even if the individual defendants are deemed to be state actors and thus liable under
§ 1983, the *Feres* doctrine is still applicable. *See Perpich*, 496 U.S. at 347 (stating that  members
26  of the National Guard "must keep three hats in their closets--a civilian hat, a state militia hat, and
an army hat--only one of which is worn at any particular time"); *Bowen v. Oistead*, 125 F.3d 800,
27  804 n.2 (9th Cir. 1997) (stating that *Feres* doctrine applies to state National Guard officials sued
28  for civil rights violations); *Newton v. Lee*, 677 F.3d 1017, 1025 (same) (10th Cir. 2012).

1    member; and (4) plaintiff's activities at the time of the injury.  *Jackson*, 648 F.3d at 73.  As the

2    First Amended Complaint makes clear, plaintiff sustained his injuries while on active duty in Iraq

3    with the National Guard, performing his duties as a counter-intelligence officer.  ECF No. 42

4    ¶¶ 19-28.  Accordingly, plaintiff's claims for monetary damages for violations of his First and

5    Fourth Amendment rights and for common law torts stemming from the unlawful use of drugs

6    and torture are barred by the *Feres* doctrine.

7           Plaintiff argues that the Ninth Circuit has questioned the scope of the *Feres*

8    doctrine, suggesting that this court should carve out an exception for the defendants' alleged

9    criminal misconduct and subsequent cover-up.  ECF No. 51 at 5; *see, e.g., Ritchie v. United*

10   *States,* 733 F.3d 871, 878 (9th Cir. 2013) (Nelson, J., concurring) ("[U]nless and until Congress

11   or the Supreme Court choose to 'confine the unfairness and irrationality that [*Feres*] has bred,'

12   we are bound by controlling precedent") (internal citation omitted; alteration in original).

13   Plaintiff has not cited authority suggesting this court has the discretion to ignore the *Feres*

14   doctrine based on egregious conduct.  Moreover, courts routinely apply the *Feres* doctrine in

15   cases stemming from disturbing conduct.  *See, e.g., Stubbs v. United States*, 744 F.2d 58 (8th Cir.

16   1984) (applying *Feres* doctrine to block suit stemming from service member's suicide as the

17   result of sexual harassment); *Dexheimher v. United States*, 608 F.2d 765 (applying *Feres* doctrine

18   to block suit stemming from service member's physical and sexual assault while in the

19   disciplinary barracks).  While these cases do not address whether an exception exists, they do

20   illustrate the reach of the *Feres* doctrine.

21                          b.  Declaratory and Injunctive Relief

22           In *Chappell,* the Supreme Court observed that even though service members could

23   not pursue *Bivens* actions for monetary relief, "military personnel are [not] barred from all redress

24   in civilian courts for constitutional wrongs suffered in the course of military service."  462 U.S. at

25   304.  However, in further restricting the availability of *Bivens* relief, the Supreme Court relied on

26   "the fact that congressionally uninvited intrusion into military affairs by the judiciary is

27   inappropriate," and characterized the just-quoted language from *Chappell* as "irrelevant" to the

28   claim for *Bivens* relief, as the statement "referred to redress designed to halt or prevent the

                                                     8

1    constitutional violation . . . ." *Stanley*, 483 U.S. at 683.  The Ninth Circuit has interpreted

2    *Chappell*'s statement to mean that the *Feres* doctrine does not prevent a service member's

3    seeking declaratory and injunctive relief in a challenge to military policies.  *Wilkins v. United*

4    *States*, 279 F.3d 782, 788 (9th Cir. 2002); *see also Dibble v. Fenimore*, 339 F.3d 120, 126-28 (2d

5    Cir. 2003) (recognizing that "[t]he line between justiciable and nonjusticiable intramilitary suits

6    has never been precisely defined," but finding suits seeking equitable relief for personnel

7    decisions to be barred); *Speigner v. Alexander*, 248 F.3d 1292, 1298 (11th Cir. 2001) ("[W]e now

8    hold that cases brought by enlisted personnel for injuries incident to service are nonjusticiable,

9    whether the claims request monetary damages or injunctive relief.").  Plaintiff is not challenging

10   policy but rather is seeking redress for past decisions, so his claim does not fit within *Chappell*'s

11   exception for equitable relief.  However, even if plaintiff could seek equitable relief for individual

12   determinations, his claim is nevertheless subject to dismissal, as discussed below.

13   III.  MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

14          The federal defendants argue that many of plaintiff's claims are insufficiently

15   pleaded and cannot be amended to state a claim.

16        A.  Standard for a Motion to Dismiss for Failure to State a Claim

17          Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

18   dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may

19   dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged

20   under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

21   1990).

22          Although a complaint need contain only "a short and plain statement of the claim

23   showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a motion

24   to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a

25   claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

26   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something

27   more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and

28   conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Id.* (quoting

9

1   *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss

2   for failure to state a claim is a "context-specific task that requires the reviewing court to draw on

3   its judicial experience and common sense."  *Id.* at 679.  Ultimately, the inquiry focuses on the

4   interplay between the factual allegations of the complaint and the dispositive issues of law in the

5   action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

6         In making this context-specific evaluation, the court must construe the complaint

7   in the light most favorable to the plaintiff and accept as true the factual allegations of the

8   complaint.  *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  This rule does not apply to "'a legal

9   conclusion couched as a factual allegation,'"  *Papasan v. Allain*, 478 U.S. 265, 286 (1986) *quoted*

10  *in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to

11  judicial notice" or to material attached to or incorporated by reference into the complaint.

12  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001), *amended on denial of*

13  *reh'g*, 275 F.3d 1187 (9th Cir. 2001).  A court's consideration of documents attached to a

14  complaint or incorporated by reference or matter of judicial notice will not convert a motion to

15  dismiss into a motion for summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th

16  Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *compare Van*

17  *Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (noting that even though

18  court may look beyond pleadings on motion to dismiss, generally court is limited to face of the

19  complaint on 12(b)(6) motion).

20      B.  War Crimes

21        In its order of July 30, 2013, the court dismissed this claim without leave to

22  amend, finding there was no private right of action under the War Crimes Act, 18 U.S.C. § 2241.

23  ECF No. 40 at 13.  Although plaintiff has included this claim in his First Amended Complaint in

24  contravention of the court's order, his opposition to the motion to dismiss does not explain why

25  the court should revisit this ruling.

26  /////

27  /////

28  /////

10

1        C.  Whistleblower Protection Act, 5 U.S.C. § 2302

2            The court previously dismissed this claim because the Whistleblower Act does not

3    apply to members of the military.  ECF No. 40 at 14.  Once again, plaintiff has not attempted to

4    demonstrate the court's prior ruling was incorrect.

5        D.  Civil Rights Violations Based on Torture

6            Plaintiff alleges that defendants are liable for violations of 42 U.S.C. §§ 1982-1988

7    stemming from their violations of the TVPA and the United Nations Convention Against Torture

8    ("CAT").  FAC ¶¶ 51-53.

9            The statutes on which plaintiff relies apply to persons acting under color of state

10   law and so do not apply to federal agencies or federal actors.  *Jachetta v. United States*, 653 F.3d

11   898, 908 (9th Cir. 2011); *Morse v. North Coast Opportunities, Inc.*, 118 F.3d 1338, 1343 (9th Cir.

12   1997) (stating that "by its very terms, § 1983 precludes liability in federal government actors").[4]

13           Moreover, while the TVPA does create a private right of action, it applies to

14   torture committed by those acting under actual or apparent authority or color of law of a foreign

15   nation, *Baloco ex rel. Tapia v. Drummond Co., Inc.*, 640 F.3d 1338, 1345 (11th Cir. 2011),

16   and the CAT does not create a direct right of action for violation of the treaty.  *Pierre v.*

17   *Gonzales*, 502 F.3d 109, 119 (2d Cir. 2007) (stating that a plaintiff "has no judicially enforceable

18   right directly arising from the CAT as interpreted by its signatory nations"); *Raffington v.*

19   *Cangemi*, 399 F.3d 900, 903 (8th Cir. 2005).

20       E.  Geneva Convention

21           The Geneva Convention "does not create a private right of action for private

22   individuals to enforce its terms."  *Nattah v. Bush*, 770 F. Supp. 2d 193, 204 (D. D.C. 2011); *In re*

23   *Iraq & Afghanistan Detainees Litig.*, 479 F. Supp. 2d 85, 117 (D.D.C. 2007), *aff'd Ali v.*

24   *Rumsfeld*, 649 F.3d 762 (D.C. Cir. 2011) (in suit challenging detention and torture, holding

25   "[b]ecause Geneva Convention IV manifests an intent to be enforced through legislation or

26

27           [4] The federal defendants do not argue that a *Bivens* action would be unavailable.  *See*
     *Vance v. Rumsfeld*, 701 F.3d 193, 198 (7th Cir. 2012) (en banc), *cert. denied* 133 S. Ct. 2796
28   (2013) (finding *Bivens* action unavailable against military personnel who mistreat detainees).

1   diplomacy, it is not a self-executing treaty that provides a private right for the plaintiffs to sue the

2   defendants for money damages.").

3          F.  Declaratory Relief Claim

4              The federal defendants argue this court lacks subject matter jurisdiction over the

5   declaratory relief claim because the decisions plaintiff challenges are not subject to judicial

6   review.  However in *Khalsa v. Weinberger*, the Ninth Circuit said "the doctrine of limited

7   reviewability of certain military . . . decisions is a matter of justiciability, analogous to the

8   political question doctrine.  Although subject matter may indeed exist, the claim may prove

9   unsuitable for review by a court acting in its traditional judicial role."  779 F.2d 1393, 1395-96

10  (9th Cir. 1985).  Such a claim is analyzed as a failure to state a claim based on prudential

11  considerations.  *Id*.

12             Before a court may review a military decision, the party seeking review must

13  satisfy a number of requirements:

14             [A]person challenging a military decision generally must satisfy
               two threshold elements before a court can determine whether
15             review is appropriate.  "An internal military decision is
               unreviewable unless the plaintiff alleges (a) a violation of [a
16             recognized constitutional right], a federal statute, or military
               regulations; and (b) the exhaustion of available interservice
17             remedies."  *Khalsa v. Weinberger*, 779 F.2d 1393, 1398 (9th Cir.),
               *reaff'd*, 787 F.2d 1288 (1985).  If the plaintiff alleges both of these
18             things, a court weighs four factors to determine whether judicial
               review of his claims is appropriate.  These factors include:
19
               (1)  The nature and strength of the plaintiff's claim;
20
               (2)  The potential injury to the plaintiff if review is refused;
21
               (3)  The extent of interference with military functions; and
22
               (4)  The extent to which military discretion or expertise is involved.
23

24  *Wenger v. Monroe*, 282 F.3d 1068, 1072 (9th Cir. 2002).

25             Defendants first argue that plaintiff has not alleged exhaustion of administrative

26  remedies.  ECF No. 46 at 19.  They do not, however, identify any available administrative

27  procedures or discuss whether plaintiff's claims would even be cognizable.  *See generally id.* at

28  1073 (excusing exhaustion because the Army Board for the Correction of Military Records

1    (ABCMR) could not order the plaintiff's reinstatement in the National Guard); *cf. Fay v. Ariz.*

2    *Nat'l Guard*, No. CV-12-1079—PHX—DGC, 2012 WL 4478811, at *3 (D. Ariz. Sep. 28, 2012)

3    (holding plaintiff could not pursue his challenge to the  removal of retirement points because he

4    had not sought correction of his record through the ABCMR).

5            Defendants also argue none of the four factors favor consideration of plaintiff's

6    case.  They first contend that the weakness of the claims weighs against review "because his

7    claims are meritless and based on multiple false allegations."  ECF No. 46 at 19.  On a motion to

8    dismiss, however, the court must evaluate the claims based on the face of the complaint.  Even so,

9    plaintiff raises his First and Fourth Amendment claims under § 1983, which may not apply given

10   the defendants' status as federal officers at the time they acted.  Nevertheless, the court need not

11   decide whether plaintiff may pursue this § 1983 claim because a consideration of the rest of the

12   factors shows that plaintiff's claim is not justiciable.  *See Sandidge v. State of Wash.*, 813 F.2d

13   1025, 1026-27 (9th Cir. 1987).

14           Plaintiff has not suggested how the court's refusal to review his claim will cause

15   injury:  the events described in the complaint occurred ten years ago and plaintiff does not allege

16   he is still a member of the National Guard.[5]  More importantly, this court's review of the Guard's

17   decision to remove plaintiff from active conflict and send him for psychiatric review would

18   involve it "in a very sensitive area of military expertise and discretion."  *Wegner*, 282 F.3d at

19   1076 (internal citation and quotation omitted).  Moreover, plaintiff's requested relief--an

20   admission of wrongdoing and a promotion--is outside this court's expertise.  *Matreale v.*

21   *New Jersey Dep't of Military & Veterans Affairs*, 418 F. Supp. 2d 603, 610 (D. N.J. 2006), *aff'd*

22   487 F. 3d 150 (3d Cir. 2007), *cert. denied*, 552 U.S. 1099 (2008) ("It is beyond the competence of

23   this Court to determine whether a Guardsman is qualified to be promoted to a higher rank, and

24   outside its proper role to intrude upon the day to day operation of the military chain of command

25   and its system of discipline in this fashion.").

26           _____
              [5] Defendants have submitted the declaration of Karl Briales and a number of exhibits
27   concerning the current military status of plaintiff and the individual defendants.  ECF No. 46-1.
     The court declines to consider this information in connection with the motion to dismiss under
28   Rule 12(b)(6).

                                                    13

1    IT IS THEREFORE ORDERED that:

2    1. CMD's motion to dismiss, ECF No. 44, is granted;

3    2. The federal defendants' motion to dismiss, ECF No. 46, is granted; and

4    3. This case is closed.

5    Dated:  December 13, 2013.

6

7    _____

8    UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14